```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
                      CLARKSBURG
```

**WEST VIRGINIA UNITED HEALTH**
**SYSTEM, INC.** *d/b/a* **WEST VIRGINIA**
**UNIVERSITY HEALTH SYSTEM**,

    **Plaintiff,**

**v.**                                             **CIVIL ACTION NO. 1:24-CV-35**
                                                                        **(KLEEH)**

**GMS MINE REPAIR AND MAINTENANCE,**
**INC. EMPLOYEE MEDICAL PLAN and**
**THE HEALTH PLAN OF WEST VIRGINIA, INC.,**

    **Defendants.**

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [ECF NO. 16]

Pending before the Court is *Plaintiff's Motion to Remand* [ECF No. 16]. For the reasons discussed herein, the Motion is **GRANTED**, and this matter is hereby **REMANDED** to the Circuit Court of Monongalia County, West Virginia, for any further proceedings.

### I.    PROCEDURAL HISTORY

Plaintiff, West Virginia United Health System, Inc. ("WVUHS"), filed a Complaint in the Circuit Court of Monongalia County, West Virginia on February 15, 2024. ECF No. 1-2. Before filing any responsive pleading, Defendant, The Health Plan of West Virginia, Inc. ("THP"), removed the case to this Court. ECF No. 1. On May 2, 2024, WVUHS filed the subject Motion to Remand. ECF No. 16. On May 30, 2025, THP filed a response in opposition to the Motion for Remand. ECF No. 20. On June 20, 2024, WVUHS filed its

reply in support of remand. ECF No. 21. The Court convened for a hearing on the subject Motion on February 12, 2025.

## II.   FACTUAL BACKGROUND

WVUHS is a healthcare provider comprised of twenty affiliated hospitals and other medical facilities. Compl., ECF No. 12, at ¶ 1. GMS Mine Repair and Maintenance ("GMS") is a mining services company that operates a self-funded health plan for its employees (the "Plan"). Id. at ¶ 2. THP is a West Virginia insurance company that acts as a third-party administrator for the GMS self-funded health plan but also simultaneously manages claims for traditional commercial health insurance products. Id. at ¶¶ 3, 10.

WVUHS and THP had an existing contract for a negotiated payment rate of medical services for its traditional commercial health insurance. Id. at ¶ 10. However, THP did not "prospectively negotiate any contracts for the GMS self-funded health plan that THP administered." Id. Without a negotiated contract, GMS's employees are considered "non-participating" and generally do not have access to WVUHS facilities for medical services other than certain emergency situations. Id. On July 7, 2022, WVUHS discovered that THP was processing hospital claims for GMS beneficiaries using a Reference-Based Pricing payment scheme. Id. at ¶ 11.[1]

---

[1] "RPB is a payment methodology in which a payor, often a self-insured employer via a third-party administrator, sets its own price for medical services rendered to its participants instead of prospectively negotiating prices with a healthcare provider in

Despite the lack of a contractual agreement, WVUHS noted that GMS's employees who were a part of GMS's self-funded health plan presented to WVUHS facilities. Id. at ¶ 16. WVUHS alleges in the that GMS's employees "frequently received non-emergent care because their member cards fraudulently imitated those of THP's participating traditional commercial health insurance plan." Id. WVUHS alleges that GMS's member cards looked like THP's commercial insurance member cards, including THP's logo and address for claims submission. Id. at ¶ 17. WVUHS alleges that the "fraudulent" inclusion of the logo and address induced WVUHS's registration specialists to reasonably believe that GMS member claims were in network because of the preexisting contract between WVUHS and THP for their commercial plans. Id.

WVUHS alleges that GMS's cards said that "Assignment of Benefits (AOB) is a waiver of the Provider's right to balance bill the patient," preventing them from recovering the unpaid balance of services from GMS members that GMS and THP discounted or refused to reimburse. Id. at ¶ 19. WVUHS also alleges that GMS's member cards attempt to establish an accord and satisfaction by stating that "[d]epositing checks received from the [GMS] Plan represents accord and satisfaction and will take precedence over any previous terms." Id. at ¶ 20.

---

order for the payor's members to be 'participating in network' with the healthcare provider." Compl., ECF No. 12, at ¶ 12.

WVUHS alleges that "GMS's members cards attempt to create implied in fact contracts with accord and satisfaction to allow it to discharge its duties to fully cover its members and prevent WVUHS from seeking to recover any outstanding balance from GMS's members." Id. at ¶ 21. WVUHS alleges that GMS and THP have not been reimbursing it at a reasonable commercial rate, but instead on a fraudulent "pay-what-they-wish" RBP scale, resulting in at least $2,500,000.00 in losses. Id. at ¶¶ 25-26.

As of January 1, 2023, THP contractually agreed to reimburse WVUHS for the RBP plans at a contracted commercial rate, but WVUHS alleges that neither GMS or THP has appropriately paid WVUHS for the services from 2020-2022. Id. at ¶¶ 30-31. WVUHS alleges that instead of a commercially reasonable rate of 90% of total billed charges, GMS and THP reimbursed WVUHS at a rate of 37% of total billed charges. Id. at ¶ 32.

In its Complaint, WVUHS alleged ten common law causes of action:

```
Count I (GMS): Quantum Meruit
Count II (GMS): Unjust Enrichment
Count III (THP): Unjust Enrichment
Count IV (GMS and THP): Negligent Misrepresentation
Count V (GMS and THP): Intentional Misrepresentation
Count VI (GMS and THP): Concealment
Count VII (GMS and THP): Fraud
Count VIII (GMS and THP): Estoppel
Count IX (GMS and THP): Civil Conspiracy
Count X (GMS and THP): Punitive Damages
```

### III. LEGAL STANDARD

Federal courts "are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations. Accordingly, a party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter. If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." Strawn v. AT & T Mobility, 530 F.3d 293, 296 (4th Cir. 2008) (citation omitted).

Federal courts "'are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated' and that 'if federal jurisdiction is doubtful, a remand to state court is necessary.'" Palisades Collections LLC v. Shorts, 552 F.3d 327, 333-34 (4th Cir. 2008) (citations omitted).

This Court has previously stated that "[a]ll doubts about the propriety of removal should be resolved in favor of retaining state court jurisdiction." Vitatoe v. Mylan Pharmaceuticals, Inc., 2008 WL 3540462, at *2 (N.D. W.Va. Aug. 13, 2008)(Keeley, J.). When considering a motion to remand, the Court is limited to considering the record at the time of removal. See Lowrey v. Ala. Power Co., 483 F.3d 1184, 1213-15 (11th Cir. 2007).

5

Removal is appropriate when a "civil action [is] brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441. Federal courts have subject matter jurisdiction over cases where a "federal statute creates the cause of action" so that the case "arise[s] under" federal law. Childers v. Chesapeake & Potomac Tel. Co., 881 F.2d 1259, 1261 (4th Cir. 1989); Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986).

## IV.   DISCUSSION

THP removed this action under federal question jurisdiction, asserting that the GMS plan is a self-funded employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). THP argues that ERISA expressly and completely preempts WVUHS's claim under federal question subject matter jurisdiction. ECF No. 1 at ¶¶ 7-10. WVUHS contends that this action was improperly removed and that this Court lacks subject matter jurisdiction over the claims at issue because WVUHS is not a plan participant or an assignee of benefits under the Plan, and it only alleged state law claims for damages relating to the direct relationship between the parties. ECF No. 16-1, at 3. As elaborated upon below, ERISA preemption is improper in this case and remand is necessary.

### A. ERISA Preemption

ERISA plans may be sued under either the Act's civil enforcement provision or various state law claims. ERISA's § 502 civil enforcement provision allows for particular persons to recover specified relief, most often plan benefits owed under the ERISA claims. Mackey v. Lanier Collection Agency and Service, Inc., 486 U.S. 825, 832-33 (1988). These types of claims are completely preempted and must be brought in federal court. "ERISA plans may [also] be sued in a second type of civil action, as well. These cases—lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan—are relatively commonplace." Id. at 833.

When considering removal jurisdiction, "we must distinguish between ordinary conflict preemption and complete preemption." Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 186 (4th Cir. 2002). Conflict preemption is "asserted as a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). Complete preemption, however, "converts an ordinary state common law complaint into one stating a federal claim." Id. at 65.

When a claim falls under ERISA's civil enforcement provision, it is completely preempted and converted into a federal claim. Id. at 65–66. A claim is completely preempted by ERISA § 502 when "an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where no other independent legal duty is implicated by a defendant's actions." Aetna Health Inc. v. Davila, 542 U.S. 200, 201 (2004) (Syl. Pt. B).

Parties are unable to "evade ERISA's pre-emptive scope" by relabeling claims to appear as non-preempted claims. Id. at 201–02 (Syl. Pt. C). To determine if a claim is completely preempted under ERISA, the Fourth Circuit adopted a three-part test:

> (1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) its claim must 'fall[ ] within the scope of an ERISA provision that [it] can enforce via § 502(a)'; and (3) the claim must not be capable of resolution 'without an interpretation of the contract governed by federal law,' i.e., an ERISA-governed employee benefit plan.

Sonoco Prods. Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 372 (4th Cir. 2003) (citations omitted).

### B. WVUHS Does Not Have Standing to Sue under ERISA as a Beneficiary or Assignee of Benefits under the Plan.

The only categories of "persons empowered to bring a civil action" under ERISA are plan participants, beneficiaries, fiduciaries, and the Secretary of Labor. 29 U.S.C. § 1132(a). A participant is defined by ERISA as

> any employee or former employee of an employer, or any member or former member of an

8

>employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002. A beneficiary is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002. WVUHS is not a participant or fiduciary under the Plan.

WVUHS and THP each assert two arguments relating to WVUHS' beneficiary status. First, Plaintiff argues that any assignments of benefits assigned to it are invalid. Second, Plaintiff argues that even if there are valid assignments of benefits under the Plan, there is a valid anti-assignment provision in the Plan that prevents it from suing under ERISA. In contrast, THP first argues that WVUHS is a beneficiary under the Plan itself, regardless of any assignments. THP secondarily argues that WVUHS is a beneficiary because of assignments of benefits by Plan participants.

### 1. WVUHS is Not a Beneficiary under the Plan.

The first question the Court must assess is whether the Plan itself confers standing on WVUHS. THP argues that WVUHS is a beneficiary under the Plan because "it submitted claims for benefits directly to the ERISA Plan and received benefit payments directly from the ERISA Plan." Defs.' Opp'n to Pl.'s Mot. for Remand, ECF No. 20, at 12. THP thus argues that submitting claims directly to the Plan is enough to confer standing.

Typically, healthcare providers are not considered participants or beneficiaries under ERISA. Griffin v. Coca-Cola Refreshments USA, Inc., 989 F.3d 923, 932 (11th Cir. 2021). Defendants cite case law from other jurisdictions to support their assertion that "pursuant to Kennedy 'the possibility of direct payment is enough for a federal court's jurisdiction,'" OSF Healthcare Sys. v. Nestle USA, Inc., No. 15-1316, 2015 WL 11023789, at *4 (C.D. Ill. Dec. 2, 2015). See also Kennedy v. Connecticut Gen. Life Ins. Co., 924 F.2d 698, 701 (7th Cir. 1991).

However, the cited cases do not fully support Defendants' position. Instead, the case law shows standing is established by valid assignments of benefits or an understood assignment of benefits evidenced by "submissions and past behavior." Univ. of Wisconsin Hosp. & Clinics Auth. v. Sw. Cath. Health Network Corp., No. 14-CV-780-JDP, 2015 WL 402739, *4 (W.D. Wis. Jan. 28, 2015). The existing law does not suggest that the mere possibility of submitting claims directly to the Plan is enough to confer standing. Also, The Plan's language does not read to automatically confer beneficiary status on a provider because it explicitly states that a provider may only submit claims "directly to the Plan, *by virtue of an assignment of benefits*." *GMS Self-Funded Health Plan*, at 52. As such, WVUHS is not a beneficiary under the Plan.

### 2. WVUHS Does Not Have Derivative Standing to Sue under the Plan.

Second, the Court must assess whether WVUHS could rely upon derivative standing through a valid assignment of benefits to bring an action under ERISA. Derivative standing is dependent on assignments of benefits. During oral arguments, the parties could not confirm whether any assignment of benefits had been granted to WVUHS. Rather, to Plaintiff's knowledge, no such assignment exists. Despite this, both parties raise arguments as if an assignment – albeit perhaps an invalid assignment – exists.

The Fourth Circuit has not "addressed the question of derivative standing for ERISA benefits, [but other] circuits have consistently recognized such standing when based on the valid assignment of ERISA health and welfare benefits by participants and beneficiaries." Brown v. Sikora & Assocs., Inc., 311 F. App'x 568, 570 (4th Cir. 2008). "An assignee may obtain derivative standing for payment of medical benefits through a written assignment from a plan participant or beneficiary." Griffin v. Coca-Cola Refreshments USA, Inc., 989 F.3d 923, 932 (11th Cir. 2021).

The Plan outlines the procedures and duties for an assignee of benefits. The Plan states:

> By submitting a claim to the Plan and accepting payment by the Plan, the Provider is expressly agreeing to the foregoing conditions and limitations of an Assignment of Benefits in addition to the terms of the Plan Document.

11

> The Provider further agrees that the payments received constitute an 'accord and satisfaction' and consideration, in full, for the Covered Expenses for services, supplies and/or treatment rendered.

*GMS Plan*, at 63. Because it is undisputed that a written assignment of benefits does not exist, it is clear to the Court that WVUHS does not have derivative standing. Even if WVUHS accepted some form of payment from THP, a written assignment of benefits was still necessary under the language of the Plan.

### 3. The Plan Contains an Anti-Assignment Provision.

Even if there was evidence of a written assignment of benefits – which there is none – the Plan contains an anti-assignment provision. The Fourth Circuit has stated that "[w]hen interpreting an ERISA health insurance plan, the Court will 'enforce the terms of an ERISA insurance plan according to "the plan's plain language in its ordinary sense."'" Wheeler v. Dynamic Eng'g, Inc., 62 F.3d 634, 638 (4th Cir. 1995) (citations omitted).

While the Fourth Circuit has not explicitly addressed the validity of anti-assignment provisions in ERISA plans, other jurisdictions have upheld the use of such clauses. See, e.g., Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield, 890 F.3d 445, 455 (3d Cir. 2018) (finding that "anti-assignment clauses in ERISA-governed health insurance plans are generally enforceable"); Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc., 371 F.3d 1291, 1296 (11th Cir. 2004)

12

("Because ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan—like assignability.").[2]

The Plan clearly provides that Participants can assign various rights to a provider except their right to sue under ERISA § 502. The Plan states:

> Notwithstanding the foregoing, the Participant does not, under any circumstances, have the right to assign to any Provider (or their representative) through an Assignment of Benefits any right to initiate any cause of action against the Plan that the Participant them self may be afforded under applicable law. This includes, but is not limited to, any right to bring suit as such is afforded to Participants under ERISA section 502(a). The assignment of any right to initiate suit against the Plan to a Provider is strictly prohibited.

GMS Plan, at 63. Under the plain language of the Plan, the anti-assignment provision appears valid and therefore, WVUHS could not bring a suit under ERISA even if there were a written assignment of benefits. Thus, WVUHS does not have standing to sue THP under ERISA.

---

[2] See also City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc., 156 F.3d 223, 229 (1st Cir. 1998); St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc., 49 F.3d 1460, 1464-65 (10th Cir. 1995); Davidowitz v. Delta Dental Plan of Cal., Inc., 946 F.2d 1476, 1481 (9th Cir. 1991).

### C. The Court Need Not Address the Parties' Additional Complete Preemption Arguments Because WVUHS Does Not Have Standing to Bring an ERISA Claim.

For complete preemption under ERISA, the claim must "fall[] within the scope of an ERISA provision that [it] can enforce via § 502(a)." Sonoco, 338 F.3d at 372 (citation omitted). The scope of ERISA is outlined in § 502 and includes "the right to sue to force disclosure of certain information, to recover benefits due under the plan, to clarify the right to future benefits, or to enforce rights under ERISA or the plan." Darcangelo, 292 F.3d at 192.

If claims seek "to enforce defendants' . . . duties under the ERISA plan, [the] claims would constitute alternative enforcement mechanisms to § 502 and would therefore relate to the ERISA plan." Id. ERISA only seeks to completely preempt "laws that undermine the 'nationally uniform *administration* of employee benefit plans.'" Id. at 194(citation omitted). When a party to an ERISA plan "takes action entirely unrelated to the administration of the plan, liability for that action does not threaten the uniformity of plan administration." Id.

The Court need not dissect each of WVUHS's claims to determine whether it is trying to remedy the denial of benefits under the Plan or is instead seeking recovery under the various state law claims because WVUHS does not have standing to bring a claim under

14

ERISA. Thus, this Court lacks subject matter jurisdiction and will refrain from further analysis.

## IV     CONCLUSION

For the reasons discussed above, this Court lacks subject matter jurisdiction and the Motion to Remand [ECF No. 16] is **GRANTED**. This action is hereby **REMANDED** to the Circuit Court of Monongalia County, West Virginia.

The Clerk shall **STRIKE** this action from the Court's active docket and **TERMINATE** all pending motions, hearings, or deadlines.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record and the Circuit Clerk of Monongalia County, West Virginia.

**DATED**: February 21, 2025

_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA